UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:23-cv-00440-BO-RJ

| | |
|---|---|
| MXR IMAGING, INC.,<br><br> *Plaintiff*,<br><br>v.<br><br>EVOHEALTH LLC and STEVEN DEATON, *individually and in his capacity as Chief Executive Officer and Owner of EvoHealth LLC*,<br><br> *Defendants*. | **MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST EVOHEALTH, LLC** |

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 7.1, Plaintiff MXR Imaging, Inc. respectfully submits this memorandum of law in support of its motion for default judgment.

## BACKGROUND

Upon entry of default, the well-pleaded allegations of a complaint are taken as true. *Ryan*, 253 F.3d at 780; Fed. R. Civ. P. 8(b)(6). Thus, the factual allegations in MXR's complaint are deemed admitted. (*See* Compl., D.E. 1.) In the interest of economy, MXR will not restate those allegations here. Rather, MXR incorporates its allegations by reference and, where necessary below, cites to the relevant numbered paragraphs of the complaint.

MXR filed its complaint on August 7, 2023, asserting breach of contract and business tort claims against EvoHealth LLC and Steven Deaton, the CEO and owner of EvoHealth. (D.E. 1.) Following issuance of the summons and service of the same and the complaint on both Defendants, Deaton declared bankruptcy under Chapter 7 rather than file a response. (*See* D.E. 5, 6, 7, 8.) MXR

is pursuing its claims against him inside the bankruptcy, seeking a determination of non-dischargeability under 11 U.S.C. § 523 in an adversary proceeding. *See In re Deaton*, No. 23-02527-5-PWM (E.D.N.C. Bankr.) (lead bankruptcy proceeding); *MXR Imaging, Inc. v. Deaton (In re Deaton)*, No. 23-00102-5-PWM (E.D.N.C. Bankr.) (adversary proceeding).

EvoHealth neither responded to the complaint nor declared bankruptcy. MXR promptly requested the entry of default against it, and the Clerk entered default. (*See* D.E. 9, 10.)

## LEGAL STANDARD

Rule 55 governs the process for obtaining default judgment against a party that fails to timely respond after being served with process. Fed. R. Civ. P. 55. Obtaining a default judgment is a two-step process. *Id.* A plaintiff must first request that the Clerk enter default as to the defendant. *Id.* Once the Clerk has entered default, the plaintiff can move for a default judgment.

"The decision to enter default judgment lies within the sound discretion of the Court." *Broglie v. MacKay-Smith*, 75 F.R.D. 739, 742 (W.D. Va. 1977). Because the Court has entered default, the well-pleaded allegations of the complaint are now taken as true. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation— other than one relating to the damages—is admitted if a responsive pleading is required and the allegation is not denied."). In deciding this motion, "the court must consider whether the unchallenged facts support the relief sought." *Carrington v. Easley*, No. 5:08-CT-3175-FL, 2011 WL 2132850, at *2 (E.D.N.C. May 25, 2011) (citing *Ryan*, 253 F.3d at 780). Next, the Court must make an independent determination regarding damages. *Id.* The Court may determine the amount of damages based on affidavits or conduct a damages hearing.[1] *E.E.O.C. v. Carter Behavior Health*

---

[1] MXR requests that the Court award damages based on the affidavits submitted with its motion, but will produce witnesses to support its request for damages if the Court so desires.

*Servs., Inc.*, No. 4:09-CV-122-F, 2011 WL 5325485, at *6 (E.D.N.C. Oct. 7, 2011) (report and recommendation) *adopted*, 2011 WL 5325473 (E.D.N.C. Nov. 3, 2011).

**ARGUMENT**

**I.     EvoHealth is liable to MXR for breach of contract (Counts I and II) and unjust enrichment (Count III).**

The elements of breach of contract under North Carolina law are (1) existence of a valid contract and (2) breach of the terms of that contract. *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). In order to prevail on a claim for unjust enrichment under North Carolina law, "a plaintiff must prove that (1) it conferred a benefit on the defendant, (2) the benefit was not conferred officiously or gratuitously, (3) the benefit is measurable, and (4) the defendant consciously accepted the benefit." *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 F. App'x 916, 920 (4th Cir. 2003). But "[a]n unjust enrichment claim is available only in the absence of an express contract between the parties." *Id.* Thus, MXR pleaded this claim in the alternative to Counts I and II, and if the Court grants a default judgment on Counts I and II, it need not consider this claim. *See, e.g.*, *Wells Fargo Bank, N.A. v. Petrone*, No. 2:22CV164, 2022 WL 9353510, at *2 (E.D. Va. Oct. 14, 2022). If the Court determines otherwise, then it should grant a default judgment as to Count III for the reasons discussed below.

MXR is entitled to monetary damages sufficient to provide MXR the benefit of its bargain. *Weber, Hodges & Godwin Commercial Real Estate Servs., LLC v. Cook*, 650 S.E.2d 834, 837 (N.C. Ct. App. 2007) ("As a general rule, the injured party in a breach of contract action is awarded damages which attempt to place the party, insofar as possible, in the position he would have been in had the contract been performed.").

**A.     The prepayment to Carolina Donor/HonorBridge**

The complaint establishes that "MXR paid EvoHealth in full before an installation of PACS

software was to take place on site at MXR's customer Carolina Donor; however, EvoHealth never even started the project and absconded with $24,500." (Compl. ¶ 62.) The attached declaration of Shelby Lemler provides additional details and shows that MXR paid EvoHealth $24,500 for PACS software and services on behalf of its customer HonorBridge (a division of Carolina Donor), consistent with the terms of a quote prepared by EvoHealth and provided to HonorBridge and MXR (which is attached to the Lemler Declaration). (Lemler Decl. ¶¶ 5–8.) EvoHealth never provided the promised software and services and never returned the $24,500. (*Id.* ¶ 8.) MXR never received any payment from Carolina Donor/HonorBridge (or any other source) either. (*Id.*) Accordingly, MXR was damaged in the amount of $24,500 and seeks to recover this amount that it paid to EvoHealth.

  **B. The unpaid sponsorship fee for MXR's National Sales Meeting**

The complaint establishes that "Deaton, on behalf of Defendant EvoHealth, accepted an invitation to serve as a paid sponsor at MXR's National Sales Meeting. EvoHealth did not pay for the sponsorship and reaped the benefits of free marketing and dedicated meeting time with the entire MXR Sales Team." (Compl. ¶ 79.) The attached declaration of Shelby Lemler provides additional details and shows that EvoHealth was a "Silver Sponsor" at MXR's 2023 National Sales Meeting in Las Vegas, consistent with the terms of an invoice MXR sent to EvoHealth in January 2023 for $13,000 (which is attached to the Lemler Declaration). (Lemler Decl. ¶ 10–11.) Neither EvoHealth nor Deaton (nor any other person or entity) ever paid EvoHealth this agreed upon sponsorship fee, but EvoHealth and Deaton accepted the benefit of access to MXR's sales team and marketing and networking opportunities with MXR's customers. (*Id.*) Accordingly, MXR was damaged in the amount of $13,000 and seeks to recover this amount from EvoHealth.

### C. The unpaid dealer compensation fees to MXR

The complaint establishes that "MXR and EvoHealth had a negotiated dealer compensation fee, as referenced on the purchase orders—that is, a fee to MXR for bringing EvoHealth customers," and that "EvoHealth owes MXR dealer compensation fees for numerous sites amounting to approximately $100,000.00." (Compl. ¶ 61.) "MXR was the source of bringing its customers directly to EvoHealth. The customer would sign MXR's contract and MXR would issue a purchase order to EvoHealth for bringing EvoHealth the customer." (*Id.* ¶ 26.)

Specifically, the MXR customers that MXR referred to EvoHealth, and that then contracted with EvoHealth for PACS services and software, include Boyotte Orthopedic & Sports Medicine Cape Fear Orthopedic Clinic PA; Kidney Hypertension & Transplant Specialists; Leighton Orthopaedics & Sports Medicine, P.C.; Monticello Medical Clinic; Morrilton Medical Clinic; The Outpatient Diagnostic Center; Quality Urgent Care of America; and The Surgery Center of Fairbanks. (*See id.* ¶ 24.) MXR invoiced EvoHealth for agreed-to dealer compensation fees for each of these referrals, but EvoHealth did not pay any of them. (Lemler Decl. ¶ 14.) MXR never received these owed dealer compensation fees from any other person or entity, either. (*Id.*) The attached declaration of Shelby Lemler provides additional details and discusses the invoices attached thereto as exhibits. (*Id.* ¶¶ 12–14.) All in all, EvoHealth failed to pay the following dealer compensation fees to MXR:

| MXR Customer | Dealer Compensation Fee |
|---|---|
| Boyotte Orthopedic & Sports Medicine | ███ |
| Cape Fear Orthopedic Clinic PA | ███ |
| Kidney Hypertension & Transplant Specialists | ███ |
| Leighton Orthopaedics & Sports Medicine, P.C. | ███ |
| Monticello Medical Clinic | ███ |
| Morrilton Medical Clinic | ███ |
| The Outpatient Diagnostic Center | ███ |
| | ███ |

| | |
|---|---|
| | |
| Quality Urgent Care of America | |
| The Surgery Center of Fairbanks | |
| **TOTAL** | **$ 137,111.20** |

(*Id.* ¶ 13.)

Accordingly, MXR was damaged in the amount of $137,111.20 and seeks to recover this amount from EvoHealth.

## II. EvoHealth is liable to MXR for violating the North Carolina Unfair and Deceptive Trade Practices Act (Count V).

The elements for a claim under the North Carolina Unfair and Deceptive Trade Practices Act are: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *Hester v. Hubert Vester Ford, Inc.*, 767 S.E.2d 129 (N.C. Ct. App. 2015).

First, EvoHealth's conduct was in or affecting commerce. Chapter 75 defines "commerce" as "all business activities, however denominated." N.C.G.S. § 75-1.1(b). In determining whether a party's conduct falls within the statute, courts should consider the "impact the practice had in the marketplace." *Rucker v. Huffman*, 99 137, 140, 392 S.E.2d 419, 421 (N.C. App. Ct. 1990). Here, Defendants' conduct had a significant impact on the marketplace. EvoHealth has damaged MXR's relationships with customers all over the country and has damaged MXR's goodwill with the public. (*See* Compl. ¶¶ 4, 59, 64.) Thus, the second element of this claim has been satisfied. Finally, Defendants' conduct has proximately damaged MXR, as described below.

### A. Breach of contract/unjust enrichment

A breach of contract accompanied by aggravating circumstances also constitutes an unfair and deceptive trade practice. *Poor*, 530 S.E.2d at 844–45. Aggravating circumstances include conduct that is deceptive. *Id.* The following conduct constitutes substantial aggravating circumstances

accompanying EvoHealth's conduct supporting MXR's breach of contract and unjust enrichment claims:

- "Defendants entered into contracts with MXR when Defendants did not intend to keep the promises they made therein, primarily regarding their promises to maintain and service PACS software sold to MXR customers." (Compl. ¶ 94.)

- "Defendants made deliberate misrepresentations to MXR during the formation of the contracts between EvoHealth and MXR, primarily regarding their capacity and inclination to continue maintaining and servicing PACS software sold to MXR customers." (*Id.* ¶ 95.)

- "Defendants attempted to conceal EvoHealth's breaches of the contracts between EvoHealth and MXR and deter MXR from investigating their conduct, primarily through communications from Deaton to MXR." (*Id.* ¶ 96.)

- "Defendants engaged in intentional deception for the purpose of continuing to reap the benefits of the contracts between EvoHealth and MXR, primarily through communications from Deaton to MXR." (*Id.* ¶ 97.)

Accordingly, all of the above breach of contract and unjust enrichment claims (with the exception of the $13,000 related to the National Sales Meeting sponsor fee) also qualify as unfair and deceptive trade practices.

### B. MXR arranging and paying for replacement PACS services for First Choice

The complaint establishes that when EvoHealth failed to deliver on its promises to provide working PACS software and related services, "MXR began to receive numerous, repeated complaints and inquiries from its customers due to not having access to patient information, the quality of the systems, and down servers not being maintained by EvoHealth. For instance, MXR customer CNY Family Care, LLP had documents held hostage by EvoHealth and had no choice but to purchase additional cloud storage to ensure that they would have access to their patient information for years to come." (Compl. ¶ 43.) The complaint also establishes that MXR "worked with other PACS software providers to facilitate some restoration of system functionality for its customers, to its own monetary detriment." (*Id.* ¶ 60.) First Choice Community Health was one such customer. MXR paid another PACS provider called RadInfo $15,000 to provide a supplemental system to

First Choice after EvoHealth's failure. (Lemler Decl. ¶¶ 18–19.) But for EvoHealth's misrepresentations and deceptive acts regarding providing software and services to First Choice, MXR would not have incurred this expense. (*Id.* ¶ 20.) Accordingly, MXR requests $15,000 in damages for this unfair and deceptive trade practice by EvoHealth.

### C. Settlement with CNY Family Care

MXR also executed a settlement agreement with CNY Family Care related to EvoHealth's failure to provide working PACS software and services ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. (Lemler Decl. ¶¶ 15.) A copy of this agreement is attached to the declaration of Shelby Lemler. (*Id.* ¶ 16.) But for EvoHealth's misrepresentations and deceptive acts regarding providing software and services to CNY Family Care, MXR would not have incurred this expense. (*Id.* ¶ 17.) Accordingly, MXR requests ▅▅▅▅▅ in damages for this unfair and deceptive trade practice by EvoHealth.

### D. MXR is entitled to treble damages.

"Once a violation of Section 75-1.1 is shown the automatic assessment of treble damages is mandated by this statute." *Standing v. Midgett*, 850 F. Supp. 396, 402 (E.D.N.C. 1993); *see also* N.C.G.S. § 75-16. Accordingly, MXR requests that this Court award treble damages. MXR's compensatory damages are as follows:

| Type | Amount |
|---|---|
| MXR's prepayment to Carolina Donor/HonorBridge | $24,500.00 |
| Unpaid sponsorship fee for National Sales Meeting | $13,000.00 |
| Unpaid dealer compensation fees | $137,111.20 |
| Replacement PACS for First Choice | $15,000.00 |
| Settlement with CNY Family Care | ▅▅▅▅▅ |
| **TOTAL** | **$199,611.20** |

MXR requests treble damages on each of these except the unpaid sponsorship fee for the National Sales Meeting. Accordingly, for the damages arising out of EvoHealth's violations of the North

Carolina Unfair and Deceptive Trade Practices Act, the treble damages on top of the compensatory damages equal $373,222.40, for a total of $572,833.60.[2]

**IV.     MXR is entitled to pre- and post-judgment interest.**

MXR has shown that it is entitled to an award of pre- and post-judgment interest. "In an action for breach of contract . . . the amount awarded on the contract bears interest from the date of breach." N.C.G.S. § 24-5(a). The statute provides for pre- and post-judgment interest at the contract rate, or if there is no contract rate, at the "legal rate," which is 8%. *Id.* §§ 24-5, 24-1. "Once breach is established, plaintiffs are entitled to interest from the date of the breach as a matter of law." *Cap Care Grp., Inc. v. McDonald*, 561 S.E.2d 578, 583 (N.C. Ct. App. 2002).

Because there is no contract rate here, the legal rate of 8% applies. EvoHealth's breaches occurred, at the very latest, on February 13, 2023, when EvoHealth filed its short-lived Chapter 11 bankruptcy petition. (*See* Compl. ¶ 65.) Accordingly, MXR is entitled to pre- and post-judgment interest on its actual damages for breach of contract/unjust enrichment, which equal $1,164.08 per month, at a rate of 8%, from February 13, 2023, until the judgment is satisfied.

Section 24-5 also provides for pre- and post-judgment interest on actual damages for non-contract claims. The statutory interest rate is 8%. N.C.G.S. § 24-1. The interest on actual damages runs from the date the action is commenced until the judgment is satisfied. *Id.* § 24-5. Accordingly, MXR is entitled to pre- and post-judgment interest on its actual damages for its claim under the North Carolina Unfair and Deceptive Trade Practices Act, which equal $166.67, at a rate of 8%,

---

[2] MXR is entitled to recover treble damages under N.C.G.S. § 75-16, or punitive damages under the common law, but not both. *Bogovich v. Embassy Club of Sedgefield, Inc.*, 712 S.E.2d 257, 266 (N.C. Ct. App. 2011). MXR elects to recover treble damages under the statute, and therefore declines to pursue its request for punitive damages. (Compl. ¶ 92.) Alternatively, if the Court concludes that treble damages are not available, MXR requests that the Court consider an award of punitive damages.

from August 7, 2023, until the judgment is satisfied.

Section 24-5 also provides for post-judgment interest on other categories of damages, such as such as treble damages. The statutory interest rate is 8%. *Id.* § 24-5. The interest on treble damages runs from entry of judgment until the judgment is satisfied. *Id.* Accordingly, MXR is entitled to post-judgment interest on its treble damages, which equal $2,488.15 per month, from entry of judgment until the judgment is satisfied.

## V. MXR is entitled to attorney's fees.

MXR is entitled to recover attorney's fees pursuant to N.C.G.S. § 75-16.1. In accordance with Fed. R. Civ. P. 54(d)(2), MXR will move for an award of attorney's fees within 14 days of entry of judgment.

## CONCLUSION

For the reasons discussed above, the Court should grant Plaintiff's motion, enter a default judgment against EvoHealth, LLC, and award actual damages, treble damages, pre- and post-judgment interest, and attorney's fees (subject to a later request by Plaintiff).

Filed: May 29, 2024

        Respectfully Submitted,

        MXR IMAGING, INC.

        By: /s/ *Benjamin S. Morrell*
        Benjamin S. Morrell (NC Bar No. 56676)
        TAFT STETTINIUS & HOLLISTER LLP
        111 East Wacker Drive, Suite 2600
        Chicago, IL 60601
        Telephone: (312) 527-4000
        Facsimile: (312) 527-4011
        bmorrell@taftlaw.com

        Paul R. Harris (special appearance pending)

TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114
Telephone: (216) 241-2838
Facsimile: (216) 241-3707
pharris@taftlaw.com

*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I served the foregoing document and the proposed order referenced therein on Defendants EvoHealth and Steven Deaton by mailing them via USPS First Class mail, postage prepaid, to Defendants' last known addresses listed below:

| | |
|---|---|
| EvoHealth LLC | Steven Deaton |
| 2626 Glenwood Ave., Ste. 550 | 12201 Beestone Lane |
| Raleigh, NC 27608 | Raleigh, NC 27614 |

I further certify that on the date listed below, I sent the foregoing document and the proposed order referenced therein by mailing them via USPS First Class mail, postage prepaid, and by sending them via email to Attorneys Travis Sasser and Philip Sasser (whom the undersigned has reason to believe represents Defendant EvoHealth LLC and/or Defendant Deaton), at the following addresses:

Travis Sasser
Philip Sasser
Sasser Law Firm
2000 Regency Parkway, Suite 230
Cary, NC 27518
travis@sasserbankruptcy.com
philip@sasserbankruptcy.com

Date: May 29, 2024

By: /s/ *Benjamin S. Morrell*
Benjamin S. Morrell
*Counsel for Plaintiff*